■ QB, LLC, Appellant, v A/R Architects, LLP, Respondent, et al., Defendant. [797 NYS2d 552]—

In an action, inter alia, to recover damages for architectural malpractice, the plaintiff appeals, as limited by its brief, from so much of an order of the Supreme Court, Queens County (Satterfield, J.), dated April 20, 2004, as granted the cross motion of the defendant A/R Architects, LLP, for summary judgment dismissing the complaint insofar as asserted against it and denied that branch of its motion which was for partial summary judgment on the issue of liability against that defendant.

Ordered that the order is modified, on the law, by deleting the provision thereof granting the cross motion of the defendant A/R Architects, LLP, for summary judgment dismissing the complaint insofar as asserted against it and substituting therefor a provision denying the cross motion; as so modified, the order is affirmed insofar as appealed from, with costs to the plaintiff, and the complaint is reinstated against the respondent.

In 1998 the plaintiff retained the defendant A/R Architects, LLP (hereinafter A/R) to provide architectural services in connection with the design and construction of a building on a vacant property known as 78-02 Queens Boulevard in Elmhurst. The project was to be built "as of right," meaning that it was to be in compliance with applicable zoning regulations so as not to require any variances. On October 22, 1998, the plaintiff sent A/R a fax indicating that the subject site was within the C4-2 zoning district. Subsequently, A/R acknowledged, in its preliminary site plan proposal dated November 3, 1998, that it would "prepare a preliminary site plan indicating the buildable area, setback requirements and parking required (as of right) for the proposed structure." The plaintiff alleged that, on or about November 2, 1998, A/R obtained additional zoning information, on an informal basis and without charge, from the defendant Metropolis Group, Inc. (hereinafter Metropolis), with which it had a pre-existing business relationship. In a memorandum dated November 2, 1998, and addressed to A/R, Metropolis stated, inter alia, that the maximum height requirement for the subject site was 60 feet. According to the plaintiff, that information was only partially correct, as the maximum height requirement for buildings within the C4-2 zoning district was 60 feet *or four stories, whichever is less.*

A/R completed its preliminary site assessment plan—which called for the construction of a *six-story* building—on November 30, 1998, and faxed it to the plaintiff with the proviso that "this plan and the designs contained within are subject to a full zoning analysis review by a code consultant." Subsequently, in December 1998 A/R prepared and submitted to the plaintiff a standard form agreement drafted by the American Institute of Architects (hereinafter the AIA). The AIA agreement provided, inter alia, that the owner was responsible for providing surveys to describe "legal limitations" for the site, including applicable zoning requirements (paragraph 4.4), and was also responsible for providing the services of consultants (other than geotechnical engineers) "when such services are requested by the Architect and are reasonably required by the scope of the Project" (paragraph 4.6). The AIA agreement also provided that "the Architect shall be entitled to rely upon the accuracy and completeness" of the information and services required to be provided by the owner (paragraph 4.9).

Although the plaintiff never signed the AIA agreement because it "had certain reservations about some of the clauses," it conceded that it "had an understanding with A/R that the services A/R would be rendering would be consistent with the

AIA agreement." In January 1999, at A/R's recommendation, the plaintiff entered into a separate agreement with Metropolis to provide zoning and code consulting services.

The design of the proposed building then commenced in earnest, and continued from 1999 through 2001. Only when the final plans were sent by the plaintiff to a local architect for independent review was it discovered that the proposed six-story height and the setback of the building along Queens Boulevard were in violation of applicable zoning regulations.

On this record, the Supreme Court erred in determining, as a matter of law, that A/R could not be held liable for proposing the construction of a six-story building in a zoning district where the applicable height limitation was four stories, particularly where A/R knew of the proposed location of the building, agreed that the design of the structure would be "as of right," and had already been informed by the plaintiff, as early as October 1998, that the subject site was within zoning district C4-2.

In particular, A/R's reliance on the terms of the AIA form agreement to shield it from all responsibility with respect to zoning requirements is misplaced. Leaving aside the parties' dispute over whether they agreed to be bound by all of the provisions of the AIA form agreement, A/R failed to establish, prima facie, that the erroneous zoning information provided by Metropolis, and on which A/R relied, was provided at a time when Metropolis was acting as an agent of the plaintiff. To the contrary, the plaintiff tendered evidence that A/R received the erroneous information from Metropolis in October 1998, *before* the submission of the AIA agreement in December 1998 and well *before* Metropolis was retained by the plaintiff as its zoning and code consultant in January 1999. Under these circumstances, the scope of A/R's professional and contractual obligations, particularly during the period predating the AIA agreement, presented material issues of fact (*cf. Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co.]*, 3 NY3d 538, 542 [compliance with building code provisions, even if not specifically included as part of architect's contractual obligations, "is not inconsistent with an architect's ordinary professional obligations"]; *see 17 Vista Fee Assoc. v Teachers Ins. & Annuity Assn. of Am.*, 259 AD2d 75, 83 [1999] [architects, in the exercise of their profession, assume certain legal duties independent of their contractual obligations, and may be held liable for failure to exercise reasonable care irrespective of their contractual duties]). Accordingly, the Supreme Court should have denied A/R's cross motion for summary judgment dismissing the complaint insofar as asserted against it.

The parties' remaining contentions are without merit. Adams, J.P., Ritter, Goldstein and Fisher, JJ., concur.